311-105 Frank M. Vitasso, Jr., accountant by A. Randolph Convo, v. Citizens First National Bank, and a lady by the name of Vincent Piazza, Jr. Mr. Convo? Please the court, counsel. I'm attorney A. Randolph Convo, attorney for the plaintiff in this matter, Mr. Vitasso. I have written a brief that I think is fairly thorough, and I'm going to go over some areas that I wish a little bit more upon, and then there will be hopefully time for questions, Judge. I first of all wish to advise the court of, advise isn't the proper word, point out to the court that this is brought under the criminal code 21-3, it is statutory, it is a statutory situation where there is a complaint filed. The code, criminal code in this section expressly says that an owner or occupant must give notice to a person that is going on to the property. That is expressly noted and in the code. I would also like to point out at A53 in the abstract that there is a, or excuse me, in the appendix that there is the actual complaint, which is filed, was filed in Bureau County, that from that you will see that there was compliance with the statute 21-3. The complaint says, quote, notice from management staff, end quote, and in the lower right hand corner was sworn by Jill Smith, the complainant. That the next item that I wish to point out to the court is a letter from Johanna, J-O-H-A-N-N-A Mattingly to the plaintiff closing out his accounts. That there is no, that is A54 in the appendix, there is no mention of any sort of warning pursuant to statute in that letter. That I have contended in my argument to the court, at the trial court, that there have been not only, let me go back to one other point here. That within the argument of the defendant, he said or implied that the defendant had been properly warned. That in my brief and in his brief, we analyzed the, including Mrs. Mattingly's so-called warning, we've analyzed four other, three other types of warning, which Mr., the counsel says is proper. We beg to differ with that being proper. We believe the one that is, that is statutorily relied upon and is in the complaint is the one involving Mrs. Mattingly when it says the notice from the management staff. We believe that we did not receive that, nor any other warnings. We have inscribed that into the affidavit in the court file, which is in your possession, that there were two affidavits which said that Mr. Patasso had never been warned by the police or by any person of the bank. That is, we believe that that is adequate to raise a question of whether or not that there can be a question of summary judgment. We further believe that, as stated in the summary judgment statute, 735 ILCS 5-2105, down to page 10 of my brief, that there's a duty to determine whether or not a genuine issue of material facts exists, and if it does, then he cannot grant this particular, that is being asked for. That, in this particular situation, that we believe that the judge erred in granting the motion for summary judgment. We further believe that his approach as a judge in dealing with a motion for summary judgment was erroneous. That, to the prejudice of the plaintiff, that if you will look at the appendix, page 32 and 33, you will see dialogue between myself as the trial attorney for Mr. Patasso, the plaintiff, and the trial judge. We believe that that was not following what the trial judge did was not following case law. That he used such words as the quote that I, the attorney, must prove my burden. He was talking about, and he also said that he referred to the defendant's subjective belief. He was talking to, the question is whether or not there is a question of, that a summary judgment can be allowed for the statute. We believe that the trial judge went outside the statute and the case law in determining this, and his speaking and his conduct at page 32 and 33 of the appendix will bear that out. That there is one other excerpt that I will point out to you at page 31 of my brief that also goes to that. As mentioned in the complaint, Jill Smith was the person that signed it, and that she was an employee of the defendant, and that she kept a business diary which in discovery was cited, and at 56A the last paragraph shows the confusion as to the letter. Basically what I am saying is this, that we believe that Mr. Patasso, the plaintiff, was denied the right to a trial by a jury in this particular situation for the reasons stated. We are asking for a, be remanded to the trial court for further proceedings including a trial. We believe that on the basis of the fact that there was noncompliance with the statute as to the criminal code. We also believe that that was justified in the posture that the trial judge took as to, as I said in my brief, almost conducting a hearing on a directed verdict rather than a hearing on a summary judgment. I think I have no further statements. If any of the court has questions, I would be happy to. Looks like there are no questions. Thank you, Mr. Cummings. Thank you. Mr. Cattery, did I mispronounce your name? Sorry. Can you please record, counsel? Your Honor, just to address a few of the things counsel was referring to. The criminal trespass statute that's at issue in this case, where the bank requested that the trespass warning be given. Case law we've cited in the brief is clear that a police officer can issue the trespass warning. The fact that the bank did not do it directly is immaterial. That's people versus schedule. It's in our brief. The bank here called the police. There was harassment. They felt like there was harassment. They asked the police to look into the situation. They asked the police to ultimately give a trespass warning to Mr. Batasso. Police officer Yeager testified under oath and in fact wrote his police report that he would go ahead and give the warning and that he did go ahead and give the warning. Mr. Batasso's belief that the warning he received was improper or that he received some different warning or misinterpreted it is not relevant. Mr. Officer Yeager's testimony that he gave the warning that was asked to be given is the significant factor in this case because it's the subjective perspective of the bank. The bank reasonably believes, according to the Dutton case, that the warning was given and that establishes that aspect of the case and does not allow plaintiffs to establish that the bank was not reasonable. So I understand there is a dispute and I've questioned Mr. Batasso in his deposition and he did not believe he received the warning. He misinterpreted what was told to him. That's true. If the bank had, I would submit if the bank had directly given him the warning, then there would be a dispute between what the bank said and what Mr. Batasso said and there would be an issue. The bank asked the officer to give the warning. There's no testimony contrary to this that the officer gave the warning. When Mr. Batasso was arrested, I think the case law is cited over and over again, it's very clear that a complaint is not enough. Just putting something in motion is not enough for a false arrest claim against a private defendant. The bank requested that a complaint be filed and had the police come. Officer Underwood is clear he performed his own investigation. The reason for the delay in the arrest was there were four or five hours of investigation performed by the officer. He not only reviewed surveillance tapes, interviewed his own witnesses, he also talked to Officer Yeager about the trespass warning. He did more than many of the cases that are cited here talk about with respect to the requirement for a false arrest. Cases like Randall, Boyd, and Carey, those kinds of cases talk about how the officers conduct their own investigation. In that situation, the private defendant is not liable for false arrest. Counsel talked about this letter from Ms. Manningly. There was an indication Ms. Manningly sent a letter closing the accounts at one point, and then Ms. Manningly, who happens to have had that position in the bank that she was writing these letters, her position required that, would also ask the attorney for the bank to write a letter about the trespassing, about him coming to the bank and asking him not to come. That letter was sent. It was sent and addressed not only Mr. Batasso, but his divorce lawyer at the time. But again, that's a side issue because had we not had the testimony of Officer Yeager, saying that he gave the oral warning, trespass warning, pursuant to that criminal statute, this may ultimately be an issue. But the fact that the letter was sent and Mr. Batasso claims it wasn't received, not only doesn't go to the reasonableness of the bank because it's addressed to his lawyer, we would presume the mail was delivered, but also is not even relevant because of Officer Yeager's testimony. It's fairly straightforward. The trial judge heard all this testimony, read all the depositions. They're in the appellate briefs as well. It's clear that Officer Yeager was not unequivocal at all. He was unequivocal. He did not believe he misinterpreted what was said, and he told the bank that. So from the bank's perspective, subjectively, the bank reasonably believed the trespass warning had been given. They actually had a second occasion where Mr. Batasso came by and they called the police again and asked again that he be given a warning. When he came the third time, they called the police. The police did their investigation and arrested Mr. Batasso. There was a commentary at the end of counsel's arguments regarding the trial court standard. There was no discovery left in the case. The case was completed. It was over. In fact, discovery was closed. It was a trial in two months, not even. The standard that was applied was appropriate, equivalent to a directed verdict standard. There was really no evidence brought forth, has been no evidence brought forth, that would suggest that the trial court's decision on summary judgment was in any way improper for the reasons that were set forth. I don't know if there's any questions about the record of the appeal. I don't believe so. Thank you very much. Thank you, Your Honor. Mr. Kamba. Thank you. I will be very brief. There is, in my argument presented to you in writing, I was concerned with the police officer saying that he had told Mr. Batasso certain things, given in fact a warning, that Mr. Batasso, once again, indicated to the per the statute by an affidavit which you have, that he received no warnings either from the police or from the defendant bank at any time. And I would like you to, in your decision, consider that also. The second thing here is that reading the depositions, reading my writings, and taking a look at the file, generally there is some leaning on a Jonna Mattingly, who was a bank officer. If you will look at her letterhead in the exhibit that I pointed out earlier, she was a bank officer. And the record is totally devoid here of any deposition, any affidavit by Mrs. Mattingly, whether or not this happened. They are, for whatever reason, they cannot get this and they are falling back, they are trying with the police officer, they are trying with the attorney for the bank the civil attorney for the bank, attorney Isaacson, who wrote three letters, letters which you have in the appendix, they are falling back on those trying to say that there was something. I don't know of anything that they have offered that is compliant with the trespass statute. I would like you to take those into consideration and thank you for your attention. Thank you Mr. Townsend. I forgot to ask if anyone had questions. Thank you very much. We will take this matter under advisement and take a short recess.